IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHICAGO REGIONAL COUNCIL OF CARPENTERS, UNITED BROTHERHOOD OF CARPENTERS AND JOINERS OF AMERICA, a voluntary association, and ELMO McKINNEY, | ) ) ) ) ) ) |
| Plaintiffs, | ) ) |
| vs. | ) ) |
| PEPPER CONSTRUCTION CO. and WORKSTEPS, INC., | ) ) ) |
| Defendants. | ) ) |

## COMPLAINT

Plaintiffs CHICAGO REGIONAL COUNCIL OF CARPENTERS, UNITED BROTHERHOOD OF CARPENTERS AND JOINERS OF AMERICA, a voluntary association ("CRCC" or "Union") and ELMO MCKINNEY ("McKinney"), by their attorney Amy Elizabeth Paluch Epton of Whitfield, McGann & Ketterman, complain of the Defendants, PEPPER CONSTRUCTION CO. ("Pepper") and WORKSTEPS, INC. ("WS") and allege as follows:

## NATURE OF THE CASE

1. This case has two counts. Both Plaintiffs seek relief under the Americans with Disabilities Act, 42 U.S.C. Section 12101 *et seq.,* as amended by the ADA Amendment Act of 2008, Public Law 110 – 325 ("ADA"). Plaintiff CRCC also seeks declaratory and equitable relief pursuant to the Declaratory Judgment Act of 1934, 28 U.S.C. Section 2201 *et seq.*

1

2.	Plaintiffs allege that Defendants violated the ADA by maintaining a policy and engaging in a pattern or practice which subjects all Carpenter job applicants to pre-employment disability-related inquiries. The pre-offer disability-related medical inquiries and examinations include, but are not limited to blood pressure checks and other cardiovascular examinations, musculoskeletal examinations as well as requests for the applicants' medical histories, inquiries about workers' compensation issues, and lists of medications prescribed to the applicants.

3.	At the time of these events, Plaintiff Elmo McKinney was a third-year Carpenter apprentice. He was and is a member of the Chicago Regional Council of Carpenters. Plaintiffs allege that the pre-employment medical and physical testing conducted by Pepper and its agent WorkSteps ("WS") violated several provisions of the ADA. Pepper, as instructed by WS, refused to hire Plaintiff McKinney because both Defendants subscribe to myths and stereotypes concerning Plaintiff's condition of Diabetes mellitus and/or because they subscribe to myths and stereotypes concerning heart beat rate, blood pressure, and other cardiovascular disorders.

## JURISDICTION AND VENUE

4.	This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. Sec. 1331 because Plaintiffs' claims involve federal questions arising under the Americans with Disabilities Act, 42 U.S.C. Sec. 12101, *et seq*

5.	Venue is proper in the Northern District of Illinois pursuant to 28 U.S.C. § 1391 because Plaintiffs' claims arose out of acts and transactions that occurred in this district. In addition, virtually all of the non-party witnesses reside or do business in this district. Although Defendant WS' central office is located in Texas, Defendant WS

transacts business in the state of Illinois and WS' agents, under Defendant WS' supervision, administer Defendant WS' medical and physical employment examinations in at least six different locations in this judicial district, giving rise to personal jurisdiction over Defendant WS.

6. All conditions precedent to suit have been met. Plaintiffs filed timely charges of discrimination with the Equal Employment Opportunity Commission ("EEOC"). This Complaint is filed within ninety days of Plaintiffs' receipt of their right to sue letters from the EEOC. A copy of the Notices of Right to Sue is attached hereto as Exhibit A and made a part of this Complaint.

## **THE PARTIES**

7. Plaintiff CRCC is a voluntary association which represents its membership of Carpenter employees in the construction industry and has its principal address at 12 East Erie Street, Chicago, Illinois, 60601.

8. Plaintiff McKinney is a member of the CRCC, a Carpenter by trade, and resides in Yorkville, Illinois. In or about July 2010, Plaintiff McKinney was a third-year apprentice Carpenter.

9. Plaintiff McKinney is an individual qualified for the position for which he applied with Pepper, and has the disability of Diabetes mellitus, Type I.

10. Defendant Pepper has continuously been a corporation organized under the laws of the State of Illinois with a principal place of business at 643 N. Orleans St., Chicago, Illinois 60610.

11. Defendant WS is a corporation registered in the state of Delaware, whose headquarters are located at 3019 Alvin Devane, Suite 150, Austin TX, 78741, and who transacts business within the state of Illinois.

12. On information and belief, Defendant WS supervises and manages a national network of approximately 1, 000 clinics, including locations within the state of Illinois, that administer WS' proprietary employment related physical and medical examinations, through healthcare clinicians trained, licensed and certified by Defendant WS.

13. On information and belief, Defendant WS has performed over a million of these employment examinations.

14. At all times relevant, both Defendants have been covered entities and employers within the meaning of the ADA. On information and belief, both Defendants have more than 15 employees.

## FACTUAL ALLEGATIONS

15. In or about July 2010, Plaintiff McKinney was unemployed and sought work as a Union Carpenter.

16. McKinney therefore immediately applied for Pepper's third-year apprentice Carpenter position when he learned of it. The first step in the application process required McKinney to complete an internet application on Pepper's website. McKinney completed the application.

17. Shortly thereafter, Pepper's employee Robert Dore contacted McKinney and informed him that he would have to take a drug test and a pre-employment physical and medical examination.

18. McKinney was given a choice of six Accelerated medical clinic locations to take the test, all of which are affiliated with WS.

19. On information and belief, all six clinics are agents of Defendant WS because they have entered a contractual relationship with Defendant WS to perform

Defendant WS's licensed employment examinations.

20. On information and belief, Defendant WS is an agent of Defendant Pepper's because Defendant WS has a contractual or other relationship with Defendant Pepper under which Defendant WS is a *de facto* final decision maker for Pepper regarding hiring decisions.

21. McKinney chose one of the clinic locations and presented himself for testing, on or about August 9, 2010.

22. A clinic employee strapped heart rate and pulse monitors on McKinney and first tested McKinney's resting rates.

23. The clinic employee informed McKinney that his resting rates were somewhat high, but permitted McKinney to proceed with the rest of the examination.

24. The clinic then tested McKinney's range of motion and muscle strength, all while strapped to the monitors. The clinic required McKinney to:

   i. Repeatedly ascend and descend an extension ladder;

   ii. Lift and carry a 4 x 8 plywood a distance of 15 feet;

   iii. Lift and carry 94 lbs; and

   iv. In the kneeling position, disassemble and reassemble nuts and bolts.

25. These tests purport to evaluate employment applicants' ability to perform what Defendants allege are the essential functions of the broad class of jobs entitled "Carpenter."

26. The requirements of these examinations do not, in fact, test the ability to perform the essential functions of a Carpenter job.

27. Simultaneously with the performance of these physical examinations, the clinic employee took an oral chronicle of McKinney' medical history.

28.     This oral chronicle required McKinney to reveal all past and current medical conditions, injuries, illnesses, surgeries, medications and workers' compensation injuries.

29.     During this oral chronicle, McKinney revealed his condition of Diabetes mellitus, Type I.

30.     McKinney successfully completed all portions of the pre-employment strength and agility examinations.

31.     McKinney also successfully passed the drug test.

32.     Following conclusion of the examinations, McKinney asked the clinic employee whether he had passed the examinations. The clinic employee refused to tell him, and advised McKinney that he would have to learn this information directly from Pepper.

33.     McKinney called Pepper's employee Robert Dore and asked whether he had passed the examinations.

34.     Robert Dore told McKinney that he had not passed the examinations because he had "failed" the "physical agility" portion of the examination. Dore told McKinney that McKinney would have to contact the clinic employee for more information about this "failure."

35.     McKinney drove back to the clinic and asked the clinic employee why he had "failed" the "physical agility" portion of the examination. The clinic employee then told McKinney that he actually "failed" the examination because his heart beat rate was too fast.

36.     McKinney reported all of the above to the Union. The Union investigated the claim.

37. Pursuant to the Union's investigation, WS' owner and President, Larry Feeler, stated that because of McKinney's allegedly fast heart beat rate, McKinney "cannot work at all or he will die," and that McKinney should not attempt to work until he has consulted "a good cardiologist."

38. Pepper refused hire to McKinney based on the results of the physical and medical examinations.

39. In actuality, McKinney is routinely stress-tested for heart disease because of his condition of Type I Diabetes mellitus, and there is nothing wrong with McKinney's heart, blood pressure, or cardiovascular system.

40. In actuality, the real reason that both Defendants refused hire to McKinney is his Type I Diabetes mellitus, or other perceived or real medical conditions.

## COUNT I
## BROUGHT BY THE CRCC SEEKING DECLARATORY AND INJUNCTIVE RELIEF FOR VIOLATION OF THE ADA BY DEFENDANT PEPPER AND DEFENDANT WORKSTEPS

41. Plaintiffs repeat and reallege paragraphs 1 through 32 of this Complaint as if fully set forth herein in this Count I.

42. Since at least June 2010, Defendant Pepper has required all applicants for bargaining-unit positions (i.e., Carpenters) to undergo a physical/medical examination ("pre-employment exam"), including strength and agility tests that purport to test the "physical agility" and ability to perform the essential functions of the position of Carpenter. Defendant WS (as Defendant Pepper's agent) and Defendant Pepper have engaged in unlawful employment practices in violation of Section 102(a) and (d)(2)) of the ADA, 42 U.S.C. §§ 12112(a), (b)(6) and (d)(2). The practices include:

7

a. maintaining a policy and engaging in a pattern or practice of subjecting all applicants for Carpenter positions to pre-offer disability-related inquiries and examinations. These pre-offer disability related medical inquiries and examinations included, but were not limited to blood pressure checks, and other cardiovascular and musculoskeletal examinations, history of workers' compensation injuries, as well as requests for the applicants' medical histories and lists of medications prescribed to the applicants. These inquiries proximately and legally resulted in tangible harm to qualified applicants who met the standards for Carpenters, including rejection for hire based on information obtained from these impermissible pre-offer disability-related inquiries.

b. Using qualification standards or selection criteria that screen out or tend to screen out a class of individuals with disabilities. Defendants' practice of conducting the pre-offer disability-related inquiries and physical examinations described in paragraph 34(a) above and using the results of those inquiries and examinations to reject applicants for employment, tended to exclude a class of individuals with disabilities from employment even when those individuals at all times relevant were qualified to perform Carpentry work.

c. The effect of the policy and practices complained of in paragraph 34(a) above has been to deprive a class of Carpenters of equal employment opportunities and otherwise adversely affect their ability to become employed with Defendant Pepper and/or other construction employers.

d. As to Defendant WS, that Defendant interfered with Carpenter applicants' employment relationship with Defendant Pepper.

e. Both Defendants refused hire to Carpenter applicants on the basis

8

that those applicants were a danger to their own or others' safety, without performing an individualized assessment of the applicants' conditions, and without considering whether the applicants were a "direct threat."

 f. Both Defendants refused hire to Carpenter applicants on the illegal basis that Defendants' believed certain applicants were at higher risk of a workers' compensation injury.

 g. Both Defendants failed to engage in the interactive process required by the ADA.

 h. Both Defendants used applicants' medical information for a purpose that is inconsistent with the ADA.

 i. Both Defendants failed to keep applicants' medical information in the confidential manner prescribed by the ADA.

 43. At all times relevant, the pre-employment exams administered to applicants for bargaining-unit positions consists of a series of tasks allegedly designed to evaluate applicants' abilities to adequately perform the job duties of a carpenter.

 44. At all times relevant, the physical/medical examination administered by WS' agent includes or requires a detailed medical history, vision test, blood pressure reading, pulse reading, visual field examination.

 45. Applicants further receive heart monitoring, reflex testing, and sensory examinations.

 46. At all times relevant, the physical/medical examinations required applicants to divulge¸ *inter alia*, their history of use of medications, both over-the-counter and prescription; family history of heart disease and/or diabetes; prior

incidences of hospitalization; and whether time off from work had been taken due to injury or illness.

47. The elements described above in paragraphs 36, 37, and 38 are "disability-related" questions which the ADA prohibits in pre-employment screening.

48. Section 12112 (a) of the ADA prohibits an employer from discriminating against a qualified individual with a disability on the basis of that disability.

49. Section 12112(b)(6) proscribes the use of qualification standards, employment tests or other selection criteria that screen out or tend to screen out an individual with a disability or class of individuals with disabilities unless the standard, test, or other selection criteria is shown to be job-related for the position in question and is consistent with business necessity.

50. Pepper's implementation, use, and administration of the pre-employment exams, as described above, violates the ADA insofar as it is designed and administered in a manner so as to tend to screen out individuals with disabilities, whether actual or perceived.

51. The refusal to hire McKinney is premised on Pepper's custom and/or policy of denying employment to individuals who cannot perform all the duties of a general description of the essential functions of a carpenter's job, regardless of whether the specific job for which the prospective employee applied required performance of those functions, and regardless of whether that applicant could perform the duties required by the particular job for which he was hired.

52. The customs or policies pursuant to which Pepper and WS took their illegal actions constitute a standard, criteria or method of administration which has

denied some of the CRCC'S members' employment positions based on their disabilities, or based on both Defendants' perception that the members are disabled.

53. Both Defendants' conduct in this respect was knowing and intentional.

54. The CRCC was harmed by both Defendants' use of these tests, in that some of its members were illegally denied employment.

## COUNT II
## BROUGHT BY BOTH PLAINTIFFS, AGAINST BOTH DEFENDANTS, FOR DISCRIMINATION AGAINST ELMO MCKINNEY UNDER SECTION 102 of Title I of the ADA, 42 U.S.C. § 12112

55. Plaintiffs repeat and reallege paragraphs 1 through 54 of this Complaint as if fully set forth herein in this Count II.

56. Section 12112 (a) of the ADA prohibits an employer from discriminating against a qualified individual with a disability on the basis of that disability.

57. In addition, Section 12102 (2)(C) extends protection to individuals who are regarded as being disabled, whether or not an actual disability exists.

58. Plaintiff McKinney is a qualified individual with a disability within the meaning of the ADA.

59. In the alternative, Pepper and WS regarded McKinney as disabled.

60. Despite McKinney's actual and/or perceived disabilities, McKinney was fully capable of meeting Pepper's legitimate employment expectations.

61. Pepper's and WS' refusal to hire or offer employment to McKinney constituted an adverse employment action, which was not based on legitimate business reasons; rather, the decision to deny McKinney an offer of employment was based on unlawful disability discrimination and/or based on a perception that McKinney was disabled.

11

62. Pepper and WS' conduct in this respect was knowing and intentional.

63. McKinney was harmed by Pepper's and WS' use of these tests, in that he was denied employment, thus suffering damages as a result of Pepper and WS' violations of the ADA, including financial loss damages, emotional distress damages, and other compensatory damages and emoluments of employment to which he would have been entitled had Pepper hired him.

### **PRAYER FOR RELIEF**

WHEREFORE**,** Plaintiffs CRCC and McKinney pray for relief under Counts I and II and pray that this Court enter judgment in Plaintiffs' favor and against Defendant Pepper and Defendant WorkSteps and also requests the following declaratory, equitable and monetary relief:

(a) Declare that Defendant Pepper and WS' physical/medical examination, as described above, violates Title I of the ADA;

(b) Enjoin Defendant Pepper and WS from administering any pre-employment examination which discriminates against any applicant for employment or employee on the basis of a disability or a perceived disability;

(c) Order both Defendants to pay Plaintiff McKinney his lost wages, including back and front pay, as a result of Defendants' unlawful conduct;

(d) Order both Defendants to pay Plaintiff McKinney compensatory and punitive damages as a result of Defendants' unlawful conduct;

(e) Order both Defendants to pay Plaintiffs CRCC and McKinney the costs and attorneys' fees associated with this lawsuit; and

(f) Order that such additional relief be awarded as the Court considers just and equitable.

>Respectfully submitted,
>
>/s/ Amy Elizabeth Paluch Epton
>One of Plaintiffs' attorneys

Terrance B. McGann
Amy Elizabeth Paluch Epton
Whitfield, McGann & Ketterman
111 East Wacker Dr., Suite 2600
Chicago, Illinois 60601
(312) 251-9700 Fax (312) 251-9701