IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHICAGO REGIONAL COUNCIL OF CARPENTERS, UNITED BROTHERHOOD OF CARPENTERS AND JOINERS OF AMERICA, a voluntary association, and ELMO McKINNEY, <br><br> Plaintiff, <br><br> v. <br><br> PEPPER CONSTRUCTION CO. and WORKSTEPS, INC., <br><br> Defendant. | Case No. 13-cv-001268 <br><br> Judge Joan B. Gottschall <br><br> Magistrate Judge Sidney I. Schenkier |

## DEFENDANT WORKSTEPS' REPLY
## IN SUPPORT OF ITS MOTION TO DISMISS

Defendant WorkSTEPS, Inc. ("WorkSTEPS"), by and through its attorneys Patrick J. Rocks and Sean C. Herring of Jackson Lewis LLP, submits this Reply in support of its motion to dismiss with prejudice the complaint filed by Plaintiffs Elmo McKinney and the Chicago Regional Council of Carpenters, United Brotherhood of Carpenters and Joiners of America pursuant to Federal Rule of Civil Procedure 12(b)(6).

### INTRODUCTION

The principal issue framed in WorkSTEPS' motion to dismiss and Plaintiffs' response is whether WorkSTEPS was Elmo McKinney's "employer" under the ADA. It is evident from the face of the complaint, and Plaintiffs' arguments in their Response, that WorkSTEPS, Pepper Construction, and McKinney never contemplated McKinney would be an actual employee of WorkSTEPS. Indeed, Plaintiffs' entire case rests on the premise that McKinney applied to be a carpenter at Pepper Construction. WorkSTEPS' role in the process in which Pepper decided

1

whether to hire McKinney was limited to the development of a battery of tests that was administered by a third party, Accelerated Rehabilitation, and the results of which were used by Pepper in its decision not to hire McKinney.

From this common ground, Plaintiffs advance several competing theories in an effort to bring WorkSTEPS within the ambit of the ADA. None show WorkSTEPS can be liable to Plaintiffs under the ADA. Because Plaintiffs confound the theories, however, and because the theories rest on fundamentally different principles, it is necessary to distinguish each theory below and then explain why each is insufficient to retain WorkSTEPS as a defendant in this action.

## ARGUMENT

### A. Plaintiffs Fail To Plead A Plausible Third Party Interference Theory.

Plaintiffs argue that WorkSTEPS is not required to be an "employer" under the ADA because the ADA reaches entities who are not employers of the plaintiff if they have control of access to employment with a third party and interfere with the employment relationship between the plaintiff and the actual employer.[1] (Pls. Resp. 4.) In support of this third-party interference theory, Plaintiffs cited *Sibley v. Memorial Hospital v. Wilson*, 488 F.2d 1338, 1341 (D.C. Cir. 1973) and a few district court decisions that followed *Sibley*.[2] None of those decisions support Plaintiffs' claims against WorkSTEPS because

---

[1] As noted in WorkSTEPS' opening brief, the interference claim is stated in one sentence in the complaint and runs contrary to all other allegations which attempt to plead either an agency relationship between Pepper and WorkSTEPS or an indirect employment relationship between McKinney and WorkSTEPS.

[2] Plaintiffs rely on *Puntolillo v. New Hampshire Racing Commission*, 375 F. Supp. 1089, 1092 (D.N.H. 1974), wherein the court dismissed defendants' motion to dismiss and, citing *Sibley*, held that the defendants generally were employers within the meaning of 42 U.S.C. §2000e(b) and controlled access to plaintiff's job market. In *Kemether v. Pennsylvania Interscholastic Athletic Ass'n*, 15 F. Supp. 2d 740, 759 (E.D. Pa. 1998), the plaintiff, relying on *Sibley*, argued that if the association was not her direct employer, it otherwise was an "employer" that had control over her access to employment with third parties sufficient to bring the association within the scope of Title VII; the court denied summary judgment based on disputed issues of fact related to the relationship between the association, regional chapters affiliated with the association, and individual schools. *Id.* at 769.

In *Sibley*, the plaintiff was a private duty nurse who received assignments through a nurse's registry and the defendant was a hospital that used the registry to request nurses to provide services to its patients. *Id.* at 1339. It was undisputed that the individual patients were responsible for their nurse's compensation and they could reject the services of a nurse at any time for any reason. *Id.* It further was evident that the plaintiff and the hospital did not contemplate a direct employer-employee relationship. Plaintiff alleged that supervisors at the hospital rejected him because he was a male and the requesting patients were female. The court ruled, however, that Title VII contemplated claims against respondents "who are neither actual nor potential direct employers of particular complainants, but who control access to such employment and who deny such access by reference to invidious criteria." *Id.* at 1342.

A divided panel of the Seventh Circuit followed the rationale in *Sibley* when it decided *Doe v. St. Joseph's Hospital*, 788 F.2d 411 (7th Cir. 1986). The plaintiff in *Doe* was a licensed physician with privileges at defendant's hospital. *Id.* at 413. The hospital revoked her privileges because she engaged in loud, abusive behavior. *Id.* Plaintiff argued that although the hospital was not her employer, it interfered with her employment relationship with her patients on the basis of her national origin, Korean, in violation of Title VII. *Id.* at 422. The court in *Doe* affirmed denial of defendant's motion to dismiss based on the rationale in *Sibley*. *Id.* at 425.

In *Alexander v. Rush North Shore Med. Ctr.*, 101 F.3d 487, 745 (7th Cir. 1996), however, the Seventh Circuit held that *Doe's* conceptual underpinning could not survive the court's more recent decisions in *Knight v. United Farm Bureau Mut. Ins. Co.*, 950 F.2d 377, 380-381 (7th Cir. 1991)(no employment relationship between insurance agent and defendant because defendant lacked requisite level of control; plaintiff was an independent contractor and could not bring a Title VII claim); *Ost v. West Suburban Travelers Limousine, Inc.*, 88 F.3d 435, 438-439 (7th Cir.

3

1996)(no employment relationship between limousine driver and defendant dispatch company because defendant lacked requisite level of control; plaintiff was independent contractor, not employee.) *Knight* and *Ost* established that an independent contractor could not bring a Title VII claim of any kind, including a claim based on the rationale in *Sibley*. *Alexander*, 101 F.3d at 745. Specifically, the court in *Alexander* held that a plaintiff "'must prove the existence of an employment relationship in order to maintain a Title VII action against [the defendant],' and that '[i]ndependent contractors are not protected by Title VII.'" *Alexander*, 101 F.3d at 745 (citing *Knight*, 950 F2d at 380; *accord Ost*, 88 F.3d at 440).

Although the requirement of an employment relationship between the plaintiff and the defendant in *Alexander* was unequivocal, the court left open the question whether an employee of "employer X" may bring an action against "employer Y" when "employer Y" is not his employer, but merely is someone whose discriminatory conduct interferes with his employment with "employer X." *Alexander* at 747. The Seventh Circuit twice has suggested the answer to that question is "no." *See Schrock v. Altru Nurses Registry*, 810 F.2d 658, 660 (7th Cir. 1987) ("We therefore need not decide when, if ever, an employer covered by the statute can be held liable for conduct toward someone who is not an employee..."); *EEOC v. Illinois*, 69 F.3d 167, 169 (7th Cir. 1995) ("We think it is very doubtful that laws which forbid employers to discriminate create a blanket liability to employees of *other* employers for interference with *their* employment relationships.") (emphasis in original).

The court in *EEOC v Illinois* further noted that cases such as *Sibley* and *Doe* involved defendants who "so far controlled the plaintiff's employment relationship that it was appropriate to regard the defendant as the de facto or indirect employer . . . ." *EEOC*, 69 F.3d at 170, citing *Shrock* at 660 and *Bullard v. Sercon*, 846 F.2d 463, 466 (7th Cir. 1988). This statement suggests

4

that the Seventh Circuit would reject a third party interference theory, but would allow claims against indirect third-party, unaffiliated, employers under Title VII and the ADA if those indirect employers have substantial control over important aspects of the plaintiff's employment, which is not the case here.

Decisions in this District reflect similar skepticism regarding the viability of third party interference claims. *Kerr v. WGN Continental Broadcasting Co.*, 229 F. Supp.2d 880, 889 (N.D. Ill. 2002) ("...interference liability is not a viable theory of relief under Title VII."); *Daniel v. Sargent and Lundy, LLC*, 2012 U.S. Dist. LEXIS 34013, at *13 (N.D. Ill. March 14, 2012) ("The Seventh Circuit may not have said whether a broad "interference" claim exists in the antidiscrimination laws.").

Moreover, when *Alexander* is read in context with cases that reject the theory that an agency relationship between the employer and an agent is sufficient to bring the agent within the term "employer," it is evident that an employment relationship *between the plaintiff and the defendant* is required to bring a claim under Title VII or the ADA. *See EEOC v. AIC Security Inv.*, 55 F.3d 1276, 1281 (7th Cir. 1995); *Williams v. Banning*, 72 F.3d 552, 553 (7th Cir. 1995).

Finally, in the unlikely event interference claims are viable in this Circuit, it is evident the defendant must be an "employer." 42 U.S.C. §12111(5)(A). Plaintiffs argue that their pleading that "on information and belief" WorkSTEPS employed more than 15 employees (Compl. at ¶ 14.) is sufficient to survive a motion to dismiss. (Pls. Resp. 7.) WorkSTEPS informed Plaintiffs during the parties' Rule 26(f) planning conference on April 15, 2013 and by letter on April 17, 2013 (attached as Ex. A.), that they do not have a good faith basis to make that allegation because WorkSTEPS had only 11 employees during the relevant time period. Under the circumstances, WorkSTEPS anticipated Plaintiffs either would withdraw their claims against

5

WorkSTEPS because they lacked a good faith basis to prosecute them, or would explain the basis for their contrary "information or belief" that WorkSTEPS actually employed a sufficient number of employees to qualify as an "employer." Rather than exercise either of those options, Plaintiffs simply assert in bad faith that they are not required to plead more than they have. WorkSTEPS recognizes the court must accept the facts alleged in the complaint in deciding a motion to dismiss, even if those facts are not pled in good faith. In the alternative, WorkSTEPS will consider its options to address this issue under other provisions of the federal rules.

**B.     Plausible Fail To Plead A Plausible Joint Employer Theory.**

Plaintiffs argue that WorkSTEPS is liable under a joint employer theory in their response brief. (Pl. Resp. 8-10.) But this theory is inapposite to the alleged facts. Nothing in the complaint suggests a plausible joint employer relationship between the two defendants. A joint employer theory can be viable when two employers exert significant control over the work of the same employees. *Shah v. Littelfuse, Inc.*, 12 C 6854, (N.D. Ill. April 29, 2013) citing *NLRB v. Western Temp. Servs., Inc.*, 821 F.2d 1258, 1266 (7th Cir. 1987). Here, Pepper Construction is a construction company; WorkSTEPS provides services to clinics that provide employment testing services to employers. There is no plausible inference in the complaint that WorkSTEPS had any control, let alone control sufficient to establish a joint employment relationship. *See, e.g., Wilcox v. Allstate Corp.*, No. 11 C 814, 2012 U.S. Dist. LEXIS 177929, at *37-38 (N.D. Ill. Dec. 17, 2012) (no joint employer relationship where defendant did not supervise plaintiff, direct or control assignments, or process requests for time off).

Plaintiffs cite *Int'l Union v. Clark*, 2006 U.S. LEXIS 64449 (D.D.C. 2006) to support their joint employment theory but the facts in *Int'l Union* are vastly different than the facts plead in this case. Although the decision in *Int'l Union* was decided under the Rehabilitation Act, 29

6

U.S.C. §701, the facts describe a joint employment relationship arising from a contract between a vendor that employed court security officers and the United States Marshalls Service ("USMS"). *Id.* at *6-12. The court found that the USMS was a joint employer because it trained the contractor's employees, determined their daily duties, retained the authority to assign different tasks, supplied them with essential equipment and made the ultimate decision whether to remove a CSO or group of CSOs from an assignment. *Id.* at *24-25. The stark differences between the facts in *Int'l Union* and Plaintiffs' allegations here further demonstrate that Plaintiffs have not plead and cannot sustain a claim that WorkSTEPS and Pepper are joint employers.[3]

C. **Plaintiffs Fail To Plead A Plausible Indirect Employment Theory.**

Plaintiffs fail to site any authority holding that a court has applied the de facto or indirect theory to a test developer. In support of their claim that WorkSTEPS was a de facto or indirect employer of McKinney, Plaintiffs cite *Hall v. Walsh Construction Co.*, 2012 U.S. Dist. Lexis 112111 (N.D. Ill. Aug. 9, 2012). But that case is distinguishable on its facts as well. The plaintiffs in *Hall* were the direct employees of a subcontractor retained by Walsh, the general contractor. *Id.* at *2. Walsh controlled job operations, subcontractors and the day-to-day duties at some of the job sites where they worked. *Id.* Plaintiffs complained that their direct supervisors and Walsh's supervisors engaged in racially derogatory behavior and that Walsh transferred them to another job site rather than investigate their complaints. *Id.* at *2-3. The court in *Hall* denied Walsh's motion to dismiss because plaintiffs had alleged that it had a significant level of control over their working conditions. *Id.* at *11-12. Both employers in *Hall* had significant control over plaintiffs' work. A comparison of the level of control Walsh had over plaintiffs' employment in *Hall* and the allegations against WorkSTEPS in the complaint, in

---

[3] Plaintiffs' citations to *Ellerby v. Illinois Circuit Court*, 1998 U.S. Dist. 2092 (N.D. Ill. Jan. 28, 1988) and *Mitchell v. Tenney*, 650 F. Supp. 703 (N.D. Ill. 1986) are unavailing. Both relied on the rationale in *Doe* and were decided before the Seventh Circuit overturned *Doe* in *Alexander*.

fact, demonstrates why neither a joint employment nor the indirect employment theory is viable against WorkSTEPS.

As explained in WorkSTEPS' opening brief, the contention that WorkSTEPS had control over a significant aspect of Pepper's employment practices is implausible. Plaintiffs allege that McKinney applied for a carpenter's job at Pepper and that Pepper decided not to hire him. The fact that Pepper relied on information provided by WorkSTEPS or Accelerated does not alter the undisputed fact that Pepper made the final decision regarding McKinney's job application. The argument that Pepper "delegated" its hiring authority to WorkSTEPS also is implausible in the face of the allegation that Accelerated reported the results of the disputed tests to Pepper and that Pepper used those results when it decided not to hire McKinney.

The only plausible theory to be derived from the complaint is that Pepper used information it obtained from WorkSTEPS and Accelerated to determine whether it would hire McKinney. Nothing in the complaint allows the inferences that WorkSTEPS had the authority to make job offers on Pepper's behalf, that it had the authority to make hiring decisions that were binding on Pepper, or that Pepper could not ignore, reject or disagree with information provided by WorkSTEPS or Accelerated. To the contrary, Plaintiffs allege that Pepper in fact made the decision not to hire McKinney. (Compl. ¶¶ 38, 50, 51; Compl. Exhibit A, Charges of Discrimination.) Because Pepper controlled the hiring decision and because there is no plausible basis to conclude that WorkSTEPS had any control over that decision, Plaintiffs' indirect employment claim against WorkSTEPS cannot survive.

D. **Plaintiffs Fail To Plead A Plausible Inverted Agency Theory.**[4]

The principal theory alleged in the complaint is that WorkSTEPS was an agent of Pepper and that by virtue of that agency relationship, WorkSTEPS could be liable under the ADA even though it was not Plaintiff McKinney's employer. Plaintiffs, however, do not address the authority in this Circuit rejecting the viability of the inverse agency argument as contrary to the plain language of the Act. *See* WorkSTEPS' opening brief at 8-9. Plaintiffs' sole argument in response is that the court in *Alam v. Miller Brewing Co.*, 709 F.3d 662 (7th Cir. 2013), modified this Circuit's rejection of the inverted agency theory. The court in *Alam* rejected plaintiff's claim against MillerCoors because he was an independent contractor, not an employee. In *dicta*, the court paraphrased plaintiff's argument that MillerCoors could be liable as an agent acting on behalf of his former employer, Miller Brewing. The cases cited in that discussion, however, do not support the theory that a third party can be liable because it is an agent of the employer. To the contrary, that authority held that a third party can be an indirect employer only if it exercises substantial control over an important aspect of the plaintiff's employment. *Alam*, 709 F.3d at 668 (citing *Carparts, Spirit,* and *Nealey*).

Plaintiffs' oblique implication that the court in *Alam* overturned the holdings in *AIC* and *Williams* is unavailing. The reference in *Alam* to agency as a basis for liability is dicta and it remains the law in this Circuit that an agent of an employer cannot be liable to the principal's employees under Title VII or the ADA on the basis of the agency relationship. *See AIC Security*

---

[4] Plaintiffs also fail to plead a plausible affiliated employer theory. Plaintiffs' reference to *Papa v. Katy Industries, Inc.*, 166 F.3d 937 (7th Cir. 1999) on page 9 of their brief suggests they may think they can keep WorkSTEPS in this action on an affiliate or single employer liability theory. The court in *Papa* recognized three exceptions that would bring a tiny employer within the scope of Title VII: (1) neglect of corporate formalities or a holding out of a parent corporation as the real party employer; (2) a deliberate splitting of a corporation into smaller corporations for the purpose of avoiding liability under the discrimination laws; and (3) direction by a parent corporation of the discriminatory act or practice. *Papa*, 166 F.3d at 940-41. Nothing in the complaint suggests any affiliate or other corporate relationship of any kind between WorkSTEPS and Pepper, or any of the facts necessary to plead one of the exceptions recognized in *Papa*.

9

*Inv.*, 55 F.3d at 1281; *see also Williams*, 72 F.3d at 553 (". . . the ADA's definition of 'employer,' which (like Title VII) includes an employer's agents is simply a statutory expression of traditional *respondeat superior* liability and imposes no individual liability on agents."); *Passananti v. Cook County*, 689 F.3d 655, 662 (7th Cir. 2012); *Alexander*, 2007 U.S. Dist. LEXIS 39398, at *10.

E. **The Union Lacks Organizational Standing.**

The Union may claim standing on two grounds, organizational standing based on an injury to itself as an entity or associational standing based on an injury to its members. *Milwaukee Police Ass'n v. Bd. of Fire & Police Comm'rs*, 708 F.3d 921, 2013 U.S App. LEXIS 3884, at *10 (7th Cir. 2013). WorkSTEPS challenged the Union's organizational standing in its motion, not its associational standing. Nothing in Plaintiffs' response brief addresses this argument. As such, the Union finds itself in precisely the same place as the union in *Milwaukee Police Ass'n*: any claim to standing derives entirely from its members. *Id.* at *10-11. Having failed to identify harm to itself, any claims brought by the Union based on organization standing should be dismissed.

F. **As Plaintiff McKinney Claims He Passed The Physical Abilities Tests, Both Plaintiffs Lack Standing To Claim The Test Does Not Measure Essential Functions Of A Carpenter's Job.**

At paragraph 30 of the complaint, Plaintiffs allege McKinney passed the four components of the abilities test. It is axiomatic that having passed the abilities test, McKinney cannot claim he was injured by it. Accordingly, because the Union's associational standing is derived solely from McKinney's Union membership, if McKinney lacks standing to make that claim, so does the Union. *Chi. Reg'l Council of Carpenters v. Thorne Assocs.*, 893 F. Supp. 2d 952, 957-958 (N.D. Ill. 2012) (holding "[T]he court agrees that [plaintiff], who passed the

medical exam, has no injury-in-fact related to it and no standing to challenge its legality. The court also agrees that the Union lacks standing.").

In their response brief, Plaintiffs offer this truly puzzling response:

> WS argues that because Plaintiff "passed" the strength and agility test, neither party has standing to challenge that part of the test. This argument fails because, as described earlier, although Plaintiff believes he successfully performed all the tasks in the strength and agility test, it appears that Defendants originally falsified the results of that test in order to use Plaintiff McKinney's alleged failure of that test as a pretext for refusing to hire Plaintiff McKinney for either his condition of Diabetes or his "fatal" heart condition. The use of the physical strength and agility test therefore injured both Plaintiff McKinney and the Union."

Plaintiffs then refer to a factual dispute in a case styled *CRCC v. Thorne* in support this argument. (Pls. Resp. at 13.)

First, whatever the issue may be in *Thorne*, it was inappropriate to attach the motion to Plaintiffs' response brief on the pending Rule 12(b) motion.[5] Second, neither McKinney, Pepper nor WorkSTEPS is a party in *Thorne*, so a factual dispute regarding the application at issue in that lawsuit could not clarify the pleadings in this case. Third, it is impossible to determine from this argument what claim Plaintiffs are bringing against the Defendants regarding the physical ability test. On the face of the complaint, McKinney passed the test but was not hired either because his heart rate was too high, or he has diabetes, or both. (Compl. ¶ 30.) Now Plaintiffs argue that McKinney passed the tests, but Defendants said he did not so they could conceal their concerns about his heart rate.[6] But this argument flies in the face of allegations that Defendants clearly stated their concerns about McKinney's heart rate. (Compl. ¶ 37.) Plaintiffs persist in their claim that McKinney passed the physical abilities test, and as such they were not injured by

---

[5] WorkSTEPS did not cite *CRCC v. Thorne* in its opening brief. The motion to reconsider attached to Plaintiffs' brief introduces arguments of counsel and facts not alleged in the complaint. As such, it is not competent authority for purposes of this motion to dismiss and should be disregarded.

[6] Neither the complaint nor the EEOC Charge describes discussions with the Defendants about diabetes. In fact, McKinney's diabetes is not even mentioned in the Charge.

11

it and cannot claim the test does not measure the ability to perform the essential functions of a carpenter's job.

## CONCLUSION

For the foregoing reasons, and the reasons stated in its opening memorandum, WorkSTEPS respectfully requests that this Court enter an Order dismissing with prejudice Plaintiffs' claims against it.

Dated: June 12, 2013                    Respectfully submitted,

                                        WORKSTEPS, INC.


                                        By: /s/ Patrick J. Rocks
                                            One of Its Attorneys

Patrick J. Rocks
Sean C. Herring
Jackson Lewis LLP
150 N. Michigan, Suite 2500
Chicago, IL 60601
Phone: (312) 787-4949
Fax: (312) 787-4995

## CERTIFICATE OF SERVICE

The undersigned, an attorney, certifies that on June 12, 2013, he caused a true and correct copy of the foregoing **Defendant WorkSTEPS' Reply in Support of Its Motion to Dismiss** to be filed with the Court by electronic filing protocols, and that same will therefore be electronically served upon all attorneys of record registered with the Court's ECF/CM system.

By: /s/ Patrick J. Rocks

# EXHIBIT A



Representing Management Exclusively in Workplace Law and Related Litigation

Jackson Lewis LLP
150 North Michigan Avenue
Suite 2500
Chicago, Illinois 60601
Tel 312 787-4949
Fax 312 787-4995
www.jacksonlewis.com

ALBANY, NY
ALBUQUERQUE, NM
ATLANTA, GA
AUSTIN, TX
BALTIMORE, MD
BIRMINGHAM, AL
BOSTON, MA
CHICAGO, IL
CINCINNATI, OH
CLEVELAND, OH
DALLAS, TX
DENVER, CO

DETROIT, MI
GREENVILLE, SC
HARTFORD, CT
HOUSTON, TX
INDIANAPOLIS, IN
JACKSONVILLE, FL
LAS VEGAS, NV
LONG ISLAND, NY
LOS ANGELES, CA
MEMPHIS, TN
MIAMI, FL
MILWAUKEE, WI

MINNEAPOLIS, MN
MORRISTOWN, NJ
NEW ORLEANS, LA
NEW YORK, NY
NORFOLK, VA
OMAHA, NE
ORANGE COUNTY, CA
ORLANDO, FL
PHILADELPHIA, PA
PHOENIX, AZ
PITTSBURGH, PA
PORTLAND, OR

PORTSMOUTH, NH
PROVIDENCE, RI
RALEIGH-DURHAM, NC
RICHMOND, VA
SACRAMENTO, CA
SAINT LOUIS, MO
SAN DIEGO, CA
SAN FRANCISCO, CA
SEATTLE, WA
STAMFORD, CT
WASHINGTON, DC REGION
WHITE PLAINS, NY

MY DIRECT DIAL IS: 312.803.2555
MY EMAIL ADDRESS IS: PATRICK.ROCKS@JACKSONLEWIS.COM

April 17, 2013

**VIA EMAIL AND U.S. MAIL**

Amy Paluch Epton
Terrance Bryan McGann
Whitfield McGann & Ketterman
111 East Wacker Drive
Suite 2600
Chicago, IL 60601
aepton@wmklaborlaw.com
tmcgann@wmklaborlaw.com

        Re: *Elmo McKinney ("McKinney") and Chicago Regional Council of Carpenters, ("CRCC") v. Pepper Construction Co. ("Pepper") and Worksteps, Inc. ("WorkSTEPS")*
           Case Number 13-cv-1268

Dear Counsel:

  As we discussed during the parties' preliminary meeting held pursuant to Judge Gottschall's standing order on April 15, 2013, WorkSTEPS, Inc. requests that plaintiffs voluntarily dismiss, with prejudice, their claims against WorkSTEPS for the following reasons:

  First, WorkSTEPS was not "a person engaged in an industry affecting commerce who has 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year . . . ." 42 U.S.C. §12111(5)(A). As we discussed on our call, WorkSTEPS has informed us that it only employed 11 employees during the period at issue in the complaint. Thus, plaintiffs cannot show WorkSTEPS meets the threshold requirement to be considered an "employer" under the ADA.

  Second, even if plaintiffs could allege, in good faith, facts sufficient to satisfy the numeric requirement in §12111(5)(A), they also would have to allege that WorkSTEPS otherwise was McKinney's "employer" with respect to his application for a carpenter's job at Pepper. There is no plausible basis for that contention. Indeed, there is not one allegation of any direct relationship between Pepper and WorkSTEPS. At best, the reasonable inference is that

Amy Paluch Epton
Terrance Bryan McGann
Whitfield McGann & Ketterman
April 17, 2013
Page 2

**jackson|lewis**
Attorneys at Law

WorkSTEPS designed a test, Accelerated Rehabilitation administered it, Accelerated provided the results to Pepper and Pepper, using that information, decided not to hire McKinney.

Third, plaintiffs' vague allegation that WorkSTEPS was "a *de facto* final decision maker for Pepper regarding hiring decisions" is not consistent with the many specific allegations to the contrary that Pepper made the hiring decision. Moreover, we have conducted what we consider to be an exhaustive search but have not found any authority in any jurisdiction recognizing a test developer like WorkSTEPS to be an "employer" on a *de facto* control theory under the ADA or Title VII. If you have such authority, please forward it to us immediately.

Fourth, we anticipate Peppers will deny that WorkSTEPS is an agent of Pepper; WorkSTEPS also will deny that allegation. Consistent with those positions is the content of the license agreements provided to you by WorkSTEPS in response to a records subpoena in the *Berglund* litigation. Those documents establish WorkSTEPS had a license agreement with Accelerated and that Accelerated provided clinical services to Pepper. There was no contractual relationship between WorkSTEPS and Pepper, let alone an agency relationship. We understand that you received the license agreement a few days before you filed this action and reasonably believe you did not have time to review it prior to filing this complaint. Now that some time has passed, however, we ask that you consider how plaintiffs can advance an agency theory of liability under the circumstances.

Fifth, even if plaintiffs could establish WorkSTEPS was an agent of Pepper, the Seventh Circuit has held agents cannot be liable under the inverse agency theory advanced in McKinney's complaint; "...the actual reason for the 'and any agent' language in the definition of 'employer' was to ensure that courts would impose *respondeat superior* liability upon employers for the acts of their agents." *EEOC v. AIC Security Inv.*, 55 F.3d 1276, 1281 (7th Cir. 1995) (citation omitted); *see also Williams v. Banning*, 72 F.3d 552, 553 (7th Cir. 1995) (". . . the ADA's definition of 'employer,' which (like Title VII) includes an employer's agents is simply a statutory expression of traditional *respondeat superior* liability and imposes no individual liability on agents."); *Passananti v. Cook County*, 689 F.3d 655, 662 (7th Cir. 2012). Similarly, our trial judge, Judge Gottschall, held in *Alexander v. N.E. IL. Univ.*, 2007 U.S. Dist. LEXIS 39398, at *10 (N.D. Ill. May 29, 2007), that "general agency principles required holding employers responsible," and not the inverse as plaintiffs suggest in this case. Because the reference to "any agent of such person" in section 12111(5)(A) defines the liability of an *employer* for the actions of its agents—not the liability of an *agent* for the actions of its alleged principal—plaintiffs inverted agency theory is not viable.

Sixth, there is no reason to name WorkSTEPS as a defendant in this litigation. Section 12112(b)(2) defines the term "discriminate" to include "participating in a contractual or other arrangement or relationship that has the effect of subjecting a covered entity's qualified applicant or employee with a disability to the discrimination prohibited by this subchapter." To the extent plaintiff could overcome the hurdles outlined above, it would only serve to protract the litigation by adding an unnecessary party defendant and would not increase the plaintiffs' opportunities to



Attorneys at Law

Amy Paluch Epton
Terrance Bryan McGann
Whitfield McGann & Ketterman
April 17, 2013
Page 3

recover damages in excess of the amount authorized under the Act. If discovery was the reason for naming WorkSTEPS as a defendant, we do not anticipate why you could not use third-party discovery here in the same manner you did in *Bergland*.

This letter outlines some of the important issues WorkSTEPS will raise in its Rule 12 motion. There are other defenses to be raised in an answer and in discovery that are not outlined here. From our perspective, even if plaintiffs could survive WorkSTEPS' motion to dismiss, they only would be delaying the inevitable dismissal of WorkSTEPS as a defendant. We assume plaintiffs seek to avoid unnecessary litigation costs, as does WorkSTEPS. Therefore, WorkSTEPS respectfully requests that plaintiffs voluntarily dismiss, with prejudice, their claims against it.

As we discussed, WorkSTEPS has until April 22, 2013, to answer or otherwise plead to plaintiffs' complaint. Thus, we ask that you respond to this request as soon as possible.

Sincerely,

JACKSON LEWIS LLP

Patrick J. Rocks

PJR/sch

cc: Sean C. Herring
Nina G. Stillman
Andrew Scroggins