UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHICAGO REGIONAL COUNCIL OF CARPENTERS, UNITED BROTHERHOOD OF CARPENTERS AND JOINERS OF AMERICA, a voluntary association, and ELMO McKINNEY, <br><br> Plaintiffs, <br><br> v. <br><br> PEPPER CONSTRUCTION CO. and WORKSTEPS, INC., <br><br> Defendants. | Case No. 13 C 1268 <br><br> Judge Joan B. Gottschall |

## MEMORANDUM OPINION & ORDER

Plaintiffs Chicago Regional Council of Carpenters (CRCC) and Elmo McKinney filed a two-count First Amended Complaint against defendants Pepper Construction Co. ("Pepper") and WorkSTEPS, Inc. ("WorkSTEPS") on February 26, 2013, seeking relief under the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* (the "ADA"), and the Declaratory Judgment Act of 1934, 28 U.S.C. § 2201 *et seq.* Both defendants have moved to dismiss the complaint under Federal Rules of Civil Procedure 12(b)(1) and (6). WorkSTEPS moves to dismiss the complaint in its entirety, while Pepper moves to dismiss the claims brought by CRCC. The court dismisses both plaintiffs' claims against WorkSTEPS. Pepper's motion is granted in part. CRCC's claims against Pepper in Count I of the complaint are dismissed without prejudice.

### I. FACTUAL BACKGROUND

The court assumes the truth of the factual allegations in the complaint. *See Munson v. Gaetz*, 673 F.3d 630, 632 (7th Cir. 2012). In or about July 2010, McKinney was a third-year

carpenter apprentice. He was and is a member of CRCC, a voluntary association which represents carpenters in the construction industry.

McKinney sought work as a union carpenter in July 2010. He applied for a position with Pepper. He was informed that he would have to take a drug test and a pre-employment physical and medical examination. He was given a choice of six Accelerated medical clinic locations at which to take the test, all of which were affiliated with WorkSTEPS. WorkSTEPS supervises a national network of clinics that administer physical and medical examinations for employers, using healthcare clinicians trained, licensed and certified by WorkSTEPS.

McKinney presented himself for testing on or about August 9, 2010. The tests purported to evaluate applicants' ability to perform the essential functions of jobs classified as "carpenter." McKinney's resting heart rate was tested, along with his range of motion and muscle strength. He was required to ascend and descend a ladder, lift and carry a 4' x 8' piece of plywood fifteen feet, lift and carry 94 pounds, and kneel while disassembling and reassembling nuts and bolts. While performing the tests, he was strapped to a heart-rate monitor. McKinney successfully completed the strength and agility examinations and passed a drug test. When the clinician took McKinney's medical history, he revealed his condition of Diabetes mellitus, Type I.

Pepper refused to hire McKinney based on the results of his physical and medical examinations. One of Pepper's employees informed McKinney that he had failed the physical agility portion of the exam. When McKinney returned to the Accelerated clinic to find out why he had failed the exam, a clinic employee told him that he had failed because his heart rate was too high. WorkSTEPS's President told CRCC that McKinney should not work before consulting a cardiologist.

The plaintiffs allege that Pepper and WorkSTEPS violated the ADA by requiring all carpenter job applicants to submit to pre-employment medical inquiries and examinations. They allege that the examinations do not test an applicant's ability to perform the essential functions of a carpenter job. The plaintiffs further allege that McKinney is routinely stress-tested for heart disease because of his diabetes, and that there is nothing wrong with his heart, blood pressure, or cardiovascular system.

In Count I, CRCC seeks declaratory and injunctive relief for violations of the ADA by Pepper and WorkSTEPS. CRCC alleges that the defendants employ pre-offer examinations which include impermissible disability-related questions. These examinations screen out a class of individuals with disabilities, when the individuals are qualified to perform carpentry work and pose no danger to their own or others' safety. CRCC further alleges that the defendants refuse to hire applicants because they believe certain applicants are at a higher risk of a workers' compensation injury. They do not engage in the interactive accommodation process required by the ADA, and they use applicants' medical information for a purpose inconsistent with the ADA. CRCC asks the court to enjoin Pepper and WorkSTEPS from administering discriminatory pre-employment examinations.

In Count II, both plaintiffs allege discrimination against McKinney by Pepper and WorkSTEPS, in violation of the ADA, 42 U.S.C. §§ 12112(a) and (2)(C). On McKinney's behalf, they seek lost wages, compensatory and punitive damages, and attorneys' fees.

## II. LEGAL STANDARDS

To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The complaint's factual allegations must "raise a

3

right to relief above the speculative level." *Twombly*, 550 U.S. at 555-56; *see also Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010) ("[P]laintiff must give enough details about the subject-matter of the case to present a story that holds together."). For purposes of the motion to dismiss, the court takes all facts alleged by the claimant as true and draws all reasonable inferences from those facts in the claimant's favor, although conclusory allegations are not entitled to this presumption of truth. *Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011). A plaintiff may plead himself "'out of court when it would be necessary to contradict the complaint in order to prevail on the merits.'" *Tamayo v. Blagojevich*, 526 F.3d 1074, 1086 (7th Cir. 2008) (quoting *Kolupa v. Roselle Park Dist.*, 438 F.3d 713, 715 (7th Cir. 2006)).

Whether a plaintiff has standing to bring a lawsuit is a jurisdictional requirement that may be challenged through a motion made pursuant to Rule 12(b)(1). When deciding a motion to dismiss for lack of standing, the court accepts as true all material allegations in the complaint and draws all reasonable inferences in the plaintiff's favor. *Lee v. City of Chi.*, 330 F.3d 456, 468 (7th Cir. 2003).

### III. ANALYSIS

#### A.  WorkSTEPS's Motion to Dismiss

McKinney alleges in the complaint that he applied to be a carpenter at Pepper. WorkSTEPS's role in the hiring process was to develop a battery of tests that were administered by Accelerated; the test results were relied upon by Pepper in its decision not to hire McKinney. The plaintiffs allege that "[WorkSTEPS] is an agent of [Pepper] because [WorkSTEPS] has a contractual or other relationship with [Pepper] under which [WorkSTEPS] is a *de facto* final decision maker for Pepper regarding hiring decisions." (First Am. Compl. ¶ 20, ECF No. 6.) They allege that WorkSTEPS "interfered with [c]arpenter applicants' employment relationship

4

with [Pepper]." (*Id.* at ¶ 42(d).) WorkSTEPS moves to dismiss on the grounds that it is not a proper defendant in this lawsuit. It argues that it must be dismissed because it was not an employer or a potential employer of McKinney, and it did not make the decision not to hire him.

The Seventh Circuit has stated that "a plaintiff must prove the existence of an employment relationship in order to maintain a Title VII action against [a] defendant." *Alexander v. Rush N. Shore Med. Ctr.*, 101 F.3d 487, 492 (7th Cir. 1996) (internal quotation marks and alteration omitted). Under limited circumstances, a third-party may be sued under the ADA even if it is not the plaintiff's employer or potential employer, under an indirect liability theory. In such cases, courts look at factors such as the entity's control and supervision over the worker, the type of business operation in question, the responsibility for costs, the type of payment and benefits provided to the employee, and the length of the job. *Hayden v. La-Z-Boy Chair Co.*, 9 F.3d 617, 622 (7th Cir. 1993); *see also Alam v. Miller Brewing Co.*, 709 F.3d 662, 668 (7th Cir. 2013) (discussing how an affiliate of the employer could be named as a defendant under a veil-piercing or successor theory). As the Seventh Circuit stated in *EEOC v. State of Illinois*,

> [T]he cases in [which a third party was a proper defendant] are ones in which the defendant so far controlled the plaintiff's employment relationship that it was appropriate to regard the defendant as the de facto or indirect employer of the plaintiff, as where a hospital prevents a nurse from being employed by a hospitalized patient. Indirect employment is a more limited theory of liability than aiding and abetting. A consultant who advised an employer on how to get rid of its older employees . . . would be an aider and abettor but not an indirect employer, for he would not control the employment relationship.

69 F.3d 167, 169 (7th Cir. 1995). *See also Bloom v. Bexar Cnty.*, 130 F.3d 722, 725 n.2 (5th Cir. 1997) ("[T]he focus of any inquiry must be the element of control.").

In the plaintiffs' complaint, there are no allegations that an employment relationship existed between McKinney and WorkSTEPS. The complaint alleges that "Pepper refused to hire

5

McKinney" based on the results of the testing. (First Am. Compl. ¶¶ 2, 38.) It was Pepper that "required all applicants . . . to undergo a physical/medical examination." (*Id.* at ¶ 42.) There are no factual allegations that would support the inference that WorkSTEPS acted as an employer, an indirect employer, or a joint or de facto employer with respect to McKinney. Nor do the allegations support the inference that WorkSTEPS had any direct authority to determine whether Pepper hired McKinney. The hiring decision was made by Pepper, based on the results of the tests designed by WorkSTEPS.

The plaintiffs rely on *Sibley Memorial Hospital v. Wilson*, 488 F.2d 1338, 1341 (D.C. Cir. 1973), and *Doe v. St. Joseph's Hospital*, 788 F.2d 421-25 (7th Cir. 1986), for the proposition that an entity may be liable for discrimination where it forecloses an employee's access to employment opportunities, even when it was not technically the employer. But *Doe* was at least partially overruled by *Alexander*, and *Sibley* is a forty-one year old case that has been questioned by courts in this circuit. *See, e.g.*, *Kerr v. WGN Cont'l Broad. Co.*, 229 F. Supp. 2d 880, 887-88 (N.D. Ill. 2002) (noting that the Seventh Circuit, in dicta, has rejected *Sibley*'s rationale). The court therefore concludes that, under the current law of this circuit, CRCC and McKinney's ADA claims must lie against Pepper as the employer, not against a third party who had no employment relationship with McKinney.

Finally, the plaintiffs argue that WorkSTEPS acted as an agent of Pepper in conducting the pre-employment testing. But insofar as WorkSTEPS made evaluations of employment qualifications on behalf of Pepper, that would provide a basis to impute liability to Pepper for WorkSTEPS's actions, not the other way around. Seventh Circuit precedent suggests that Pepper may not use the fact that WorkSTEPS designed the pre-employment testing to shield its own liability, if it relied on tests unrelated to the essential functions of a carpenter position. *See*

6

*Duncan v. Fleetwood Motor Homes*, 518 F.3d 486, 492-93 (7th Cir. 2008) (rejecting argument that employer was insulated from liability because WorkSTEPS created a job description); *see also Holiday v. City of Chattanooga*, 206 F.3d 637, 645 (6th Cir. 2000) ("Employers do not escape their legal obligations under the ADA by contracting out certain hiring and personnel functions to third parties."). In other words, if Pepper could not find a medical examination provider willing to treat applicants on a nondiscriminatory basis, Pepper would need to provide any required testing itself or forgo it altogether. The entity that created the testing, however, would not be a proper defendant in a discrimination suit.

As the facts alleged in the complaint provide no basis to hold WorkSTEPS liable under the ADA, both counts of the complaint are dismissed against WorkSTEPS.

**B. Pepper's Motion to Dismiss CRCC's Claims**

    1. Associational Standing

Because Article III of the Constitution limits federal jurisdiction to "cases or controversies," a litigant must show that it has (1) "suffered a concrete and particularized injury that is either actual or imminent"; (2) "that the injury is fairly traceable to the defendant"; and (3) "that it is likely that a favorable decision will redress that injury." *Massachusetts v. EPA*, 549 U.S. 497, 517 (2007) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). Pepper argues that CRCC lacks standing to bring this lawsuit because it has not established that it suffered an injury in fact.

An association such as a union may satisfy the standing requirement of Article III by asserting claims that arise from injuries sustained by the association itself, or it may sue as a representative of its members. The complaint does not allege that CRCC suffered an injury to itself; it alleges an injury suffered by CRCC's members. CRCC contends that its members,

including McKinney, have been rejected for carpentry positions based on impermissible disability-related inquiries and tests which were unrelated to the duties of the jobs for which they applied. (First Am. Compl. ¶¶ 42(a), 51.)

To sue as a representative of its members, an association must establish that: "(1) the members would otherwise have standing to sue in their own right; (2) the interests the association seeks to protect are germane to its purpose; and (3) neither the claim asserted nor the relief requested requires the participation of individual members of the association in the lawsuit." *Chi. Teachers Union, Local 1 v. Bd. of Educ. of the City of Chi.*, No. 12 C 10311, 2013 WL 3337826, at *1 (N.D. Ill. July 2, 2013) (citing *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977)).

As to the first element, the association must show an actual injury to its members, sufficient to allow them to sue in their own right. The complaint must allege that this injury was caused by the defendants' conduct and is capable of being redressed by a favorable decision. *See Disability Rights Wis., Inc. v. Walworth Cnty. Bd. of Supervisors*, 522 F.3d 796, 802 (7th Cir. 2008). Pepper argues that CRCC lacks standing to challenge the physical examination because it has not alleged an actual injury to its members. According to Pepper, no member of CRCC was denied employment because he or she failed the physical examination. Pepper argues that McKinney himself passed the test and that CRCC has identified no other member who failed the test.

Pepper's argument fails for two reasons. First, an association does not need to specifically identify the member on whose behalf the suit is filed. *Id.* CRCC has alleged that some of its members were rejected for hire due to pre-employment testing. It need not name them. Second, the complaint alleges that McKinney was denied employment based on the pre-

employment testing. Pepper told him that he failed the physical agility exam. (First Am. Compl. ¶ 34.) Although he successfully completed the exercises, his heart rate was high during the examination, and WorkSTEPS informed him that he was denied employment on that basis. Thus, the combined physical and medical examinations caused him to be denied employment. (*Id*. at ¶¶ 37-38.) The court concludes that CRCC has sufficiently alleged that one or more of its members suffered an injury in fact that was caused by Pepper's conduct. The first *Hunt* element is established.

The other two elements of *Hunt* are also satisfied. The second element is satisfied because the interests CRCC seeks to protect in ensuring that its members are not subjected to discriminatory pre-employment testing are germane to the union's purpose. The third element is satisfied because the participation of individual members of CRCC is not required for declaratory and injunctive relief. The claim brought by CRCC on behalf of members other than McKinney seeks only declaratory and injunctive relief; only McKinney seeks lost wages. *Cf. Sanner v. Bd. of Trade*, 62 F.3d 918, 923 (7th Cir. 1995) (where suit requires calculation of individual members' damages, the third element is not met). Because CRCC has met each of the *Hunt* elements, it has associational standing to bring its claims against Pepper.

    2. Exhaustion of Administrative Remedies

Before bringing an employment action under the ADA, a plaintiff must file a charge with the EEOC. 42 U.S.C. § 2000e-5(e). The requirement serves two purposes: it promotes the prompt resolution of the dispute by settlement or conciliation, and it ensures timely notice to the employer of the grievance. *Teal v. Potter*, 559 F.3d 687, 691 (7th Cir. 2009). Pepper argues that CRCC did not file an EEOC charge and that its claims must therefore be dismissed. CRCC

responds that McKinney filed an EEOC charge regarding the allegedly unlawful conduct, and that CRCC may "piggyback" on McKinney's charge.

"Piggybacking," also known as the "single-filing doctrine," is a judicially created exception to the requirement that a plaintiff file an EEOC charge. It allows a plaintiff who did not file a timely administrative charge to intervene if the plaintiff's claim "arises out of the same or similar discriminatory conduct, committed in the same period, as the claim in the suit in which [the plaintiff] wants to intervene." *Horton v. Jackson Co. Bd. of Cnty. Comm'rs*, 343 F.3d 897, 899 (7th Cir. 2003).

Pepper argues that CRCC may not avail itself of the single-filing doctrine because McKinney's EEOC charge did not suggest that his claims had a class or collective dimension or that the conduct at issue involved anyone but McKinney. McKinney's charge does not refer to CRCC or to other applicants with similar claims as McKinney's. It states, "I believe I have been discriminated against because of my perceived disability. The Employer refused to hire me based on the results of a pre-hire medical examination. Specifically, the Employer wrongfully refused to hire me because they said my heart beat rate was too fast." (First Am. Compl. Ex. A (EEOC Charge), ECF No. 6-1.)

The Seventh Circuit stated in *Anderson v. Montgomery Ward & Co.* that piggybacking is allowed only when the defendants is put on notice "of the possibility of a subsequent lawsuit with many plaintiffs," such as when the charge alleges class-wide discrimination. 852 F.2d 1008, 1016 (7th Cir. 1988). This allows the employer to appreciate, "during the conciliation stage, the magnitude of his potential liability." *Id.* Subsequently, in *Horton*, the Seventh Circuit explained that the doctrine must be "limited to cases in which the claims arise from the same facts rather than merely from facts that resemble each other or are causally linked to each other."

343 F.3d at 901. In such cases, the act of filing the charge is unnecessary, because the employer is already on notice of the claim. The court, however, stopped short of limiting the rule to class actions.[1]

In this case, the CRCC's claim in Count I is brought on behalf of a "class" of its members who were rejected by Pepper based on pre-employment testing, even though they were qualified to perform carpentry work. (First Am. Compl. ¶ 42(b).) McKinney's EEOC charge, however, includes only allegations that he was discriminated against based on a perceived disability. It does not allege that the pre-employment testing was impermissible as applied to all applicants for carpenter positions. Thus, the charge did not give Pepper notice of the scope of the CRCC's claims, which are based on a different fact pattern from that set out in the charge. The court concludes that this circuit's precedent does not permit the CRCC to piggyback on McKinney's charge insofar as it seeks declaratory and injunctive relief on behalf of a class of its members. Count I is accordingly dismissed without prejudice. As CRCC's claims in Count II are identical to McKinney's, CRCC may piggyback on McKinney's EEOC charge with respect to those claims; thus, it may remain in this case as a plaintiff with respect to Count II.

---

[1] Some circuits have held that piggybacking is allowed only when the EEOC charge alleges class-based discrimination. *Lockhart v. Westinghouse Credit Corp.*, 879 F.2d 43, 52-53 (3d Cir. 1989); *Kloos v. Carter-Day Co.*, 799 F.2d 397, 400-01 (8th Cir. 1986) ("An allegation of class-wide discrimination . . . is necessary to inform and give notice to the employer that the consequences of an individual plaintiff's charge may transcend an isolated individual claim.") (internal quotation marks and alterations omitted). Courts in the First Circuit adopt a narrower approach, requiring only "some indication that the grievance affects a group of individuals defined broadly enough to include those who seek to piggyback on the claim," because "[s]uch a claim alerts the EEOC that more is alleged than an isolated act of discrimination and affords sufficient notice to the employer to explore conciliation with the affected group." *Greene v. City of Boston*, 204 F. Supp. 2d 239, 241 (D. Mass. 2002).

## IV. CONCLUSION

WorkSTEPS's motion to dismiss is granted, and all claims against WorkSTEPS are dismissed. Pepper's motion to dismiss the CRCC's claim in Count I is also granted. The dismissal, based on the CRCC's failure to exhaust administrative remedies, is without prejudice. The plaintiffs may proceed on Count II of the complaint against Pepper.

ENTER:

DATED: March 26, 2014     /s/
JOAN B. GOTTSCHALL
United States District Judge